UNITED STATES DISTRICT COURT

FOR THE EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| REHEMA STEPHENS,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>COUNTY OF SACRAMENTO DEPARTMENT OF HUMAN ASSISTANCE OF NORTHERN CALIFORNIA WELFARE DIVISION,<br><br>　　　　　Defendant. | No. 2:16-cv-1849-JAM-EFB PS<br><br>ORDER AND FINDINGS AND RECOMMENDATIONS |

This case was before the court on February 27, 2019 for hearing on the sole defendant County of Sacramento's (hereafter "County") motion for summary judgment (ECF No. 35) and the court's November 16, 2018 order directing plaintiff to show cause why sanctions should not be imposed for her failure to timely respond to the County's motion (ECF No. 36).[1] Attorney Glen Williams appeared on behalf of the County, and plaintiff appeared pro se. For the following reasons, the order to show cause is discharged and it is recommended that the County's motion be granted.

---

[1] This case, in which plaintiff is proceeding pro se, is before the undersigned pursuant to Eastern District of California Local Rule 302(c)(21). *See* 28 U.S.C. § 636(b)(1).

1

I.  Order to Show Cause

The County noticed its motion for summary judgment for hearing on November 28, 2018. ECF No. 35. In violation of Local Rule 230(c), plaintiff failed to timely file an opposition or statement of non-opposition to the motion. Accordingly, the hearing on the motion was continued and plaintiff was ordered to show cause why sanctions should not be imposed for her failure to respond to the motion. ECF No. 36. Plaintiff was also ordered to file an opposition or statement of non-opposition to the pending motion.

In response, plaintiff explains that she was diligently working on her response to the motion but was unable to finish it before the original deadline. ECF No. 37. Plaintiff also filed a declaration in opposition to the County's motion (but not a formal opposition) and a response to defendant's Statement of Undisputed Facts. ECF Nos. 38, 39. In light of plaintiff's representation and her pro se status, the order to show cause is discharged and no sanctions are imposed.

II.  Defendant's Motion for Summary Judgement

A.  Undisputed Facts

Plaintiff's complaint alleges claims against the County of Sacramento for racial discrimination, retaliation, and hostile work environment in violation of Title VII of the Civil Rights Act of 1964 ("Title VII"). ECF No. 1.

On December 2, 2013, plaintiff was hired as a Human Services Specialist ("HSS") at the County of Sacramento Department of Human Assistance. Decl. of Donna Doyle ("Doyle Decl.") ¶ 4; Decl. of Rehema Stephens ("Stephens Decl.") ¶ 4. Following her completion of her HSS Induction class on March 10, 2014, plaintiff was assigned to a unit at the Bowling Green Bureau and commenced a twelve-month probationary HSS position. Doyle Decl. ¶ 7; Compl. ¶7. Plaintiff's immediate supervisor was Carmen Espinoza, who reported to Project Manager Donna Doyle. Doyle Decl. ¶ 7.

On March 17, 2014, Espinoza met with plaintiff to discuss plaintiff's interest in taking the African American Cultural Special Skills Exam. Decl. of Carmen Espinoza ("Espinoza Decl.") ¶ 9; Stephens Decl. ¶ 13. During the conversation, Ms. Espinoza told plaintiff to do her "due

2

diligence" because "dealing with that particular demographic can be difficult." Stephens Decl. ¶ 13. When plaintiff asked Ms. Espinoza if she was referring to black people, Ms. Espinoza stated that many people make the mistake of "thinking that because they're of the same race and culture they have an automatic in." *Id*. Plaintiff then asked Ms. Espinoza if she was suggesting that plaintiff not take the exam, to which Espinoza replied, "No, I'm just making sure you have all the facts." *Id*.

After this conversation, the working relationship between plaintiff and Ms. Espinoza deteriorated and multiple disputes arose. Stephens Decl. ¶¶ 14-17, 19-22; Espinoza Decl. ¶¶ 10-14. At plaintiff's request, Ms. Doyle held a meeting on April 2, 2014 to discuss the comments Ms. Espinoza made on March 17 and her subsequent interactions with plaintiff. Stephens Decl. ¶¶ 23, 25. At the meeting—which was attended by Ms. Doyle, Ms. Espinoza, plaintiff, and plaintiff's union representative, Mechele Dews—plaintiff requested she be assigned to another unit with a different supervisor. *Id*. ¶ 25. Ms. Doyle denied that request. *Id*.

On May 23, 2014, plaintiff was called into Ms. Doyle's office and given a Notice of Release from Probationary Status. *Id*. ¶ 27. Ms. Doyle informed plaintiff that her employment was being terminated because she was insubordinate to her direct supervisor, unprofessional with clients, and demonstrated an inability to work well with her coworkers. *Id*.

B. <u>Summary Judgment Standard</u>

Summary judgment is appropriate when there is "no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). Summary judgment avoids unnecessary trials in cases in which the parties do not dispute the facts relevant to the determination of the issues in the case, or in which there is insufficient evidence for a jury to determine those facts in favor of the nonmovant. *Crawford–El v. Britton*, 523 U.S. 574, 600 (1998); *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247–50 (1986); *Nw. Motorcycle Ass'n v. U.S. Dep't of Agric.*, 18 F.3d 1468, 1471–72 (9th Cir. 1994). At bottom, a summary judgment motion asks whether the evidence presents a sufficient disagreement to require submission to a jury.

/////

The principal purpose of Rule 56 is to isolate and dispose of factually unsupported claims or defenses. *Celotex Cop. v. Catrett*, 477 U.S. 317, 323–24 (1986). Thus, the rule functions to "'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" *Matsushita Elec. Indus. Co., Ltd. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments). Procedurally, under summary judgment practice, the moving party bears the initial responsibility of presenting the basis for its motion and identifying those portions of the record, together with affidavits, if any, that it believes demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323; *Devereaux v. Abbey*, 263 F.3d 1070, 1076 (9th Cir. 2001) (en banc). If the moving party meets its burden with a properly supported motion, the burden then shifts to the opposing party to present specific facts that show there is a genuine issue for trial. Fed. R. Civ. P. 56(e); *Anderson*, 477 U.S. at 248; *Auvil v. CBS "60 Minutes"*, 67 F.3d 816, 819 (9th Cir. 1995).

A clear focus on where the burden of proof lies as to the factual issue in question is crucial to summary judgment procedures. Depending on which party bears that burden, the party seeking summary judgment does not necessarily need to submit any evidence of its own. When the opposing party would have the burden of proof on a dispositive issue at trial, the moving party need not produce evidence which negates the opponent's claim. *See e.g., Lujan v. National Wildlife Fed'n*, 497 U.S. 871, 885 (1990). Rather, the moving party need only point to matters which demonstrate the absence of a genuine material factual issue. *See Celotex*, 477 U.S. at 323–24 ("[W]here the nonmoving party will bear the burden of proof at trial on a dispositive issue, a summary judgment motion may properly be made in reliance solely on the 'pleadings, depositions, answers to interrogatories, and admissions on file.'"). Indeed, summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. *See id.* at 322. In such a circumstance, summary judgment must be granted, "so long as whatever is before the district court demonstrates that the standard for entry of summary judgment . . . is satisfied." *Id.* at 323.

/////

To defeat summary judgment the opposing party must establish a genuine dispute as to a material issue of fact. This entails two requirements. First, the dispute must be over a fact(s) that is material, i.e., one that makes a difference in the outcome of the case. *Anderson*, 477 U.S. at 248 ("Only disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment."). Whether a factual dispute is material is determined by the substantive law applicable for the claim in question. *Id*. If the opposing party is unable to produce evidence sufficient to establish a required element of its claim that party fails in opposing summary judgment. "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322.

Second, the dispute must be genuine. In determining whether a factual dispute is genuine the court must again focus on which party bears the burden of proof on the factual issue in question. Where the party opposing summary judgment would bear the burden of proof at trial on the factual issue in dispute, that party must produce evidence sufficient to support its factual claim. Conclusory allegations, unsupported by evidence are insufficient to defeat the motion. *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989). Rather, the opposing party must, by affidavit or as otherwise provided by Rule 56, designate specific facts that show there is a genuine issue for trial. *Anderson*, 477 U.S. at 249; *Devereaux*, 263 F.3d at 1076. More significantly, to demonstrate a genuine factual dispute the evidence relied on by the opposing party must be such that a fair-minded jury "could return a verdict for [him] on the evidence presented." *Anderson*, 477 U.S. at 248, 252. Absent any such evidence there simply is no reason for trial.

The court does not determine witness credibility. It believes the opposing party's evidence, and draws inferences most favorably for the opposing party. *See id*. at 249, 255; *Matsushita*, 475 U.S. at 587. Inferences, however, are not drawn out of "thin air," and the proponent must adduce evidence of a factual predicate from which to draw inferences. *American Int'l Group, Inc. v. American Int'l Bank*, 926 F.2d 829, 836 (9th Cir. 1991) (Kozinski, J., dissenting) (citing *Celotex*, 477 U.S. at 322). If reasonable minds could differ on material facts at issue, summary judgment is inappropriate. *See Warren v. City of Carlsbad*, 58 F.3d 439, 441 (9th

Cir. 1995). On the other hand, "[w]here the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" *Matsushita*, 475 U.S. at 587 (citation omitted); *Celotex*, 477 U.S. at 323 (if the evidence presented and any reasonable inferences that might be drawn from it could not support a judgment in favor of the opposing party, there is no genuine issue). Thus, Rule 56 serves to screen cases lacking any genuine dispute over an issue that is determinative of the outcome of the case.

C. Discussion

Plaintiff alleges three claims under Title VII. First, she alleges that the termination of her employment was motivated by racial animus. ECF No. 1 at 8-9. Second, she claims her employment was terminated in retaliation for participation in protected activities. *Id*. at 9-11. Lastly, she alleges that she was subjected to a hostile work environment.[2] *Id*. at 9.

1. Disparate Treatment and Retaliation

An employee may show violations of Title VII by proving disparate treatment, a hostile work environment, or retaliation for protected activities. To establish a prima facie case of disparate treatment under Title VII, a plaintiff must introduce evidence that "give[s] rise to an inference of unlawful discrimination." *Yartzoff v. Thomas*, 809 F.2d 1371, 1374 (9th Cir. 1987) (quoting *Texas Dep't of Community Affairs v. Burdine*, 450 U.S. 248, 253 (1981)). To establish a prima facie case under Title VII, a plaintiff must offer proof: (1) that she belongs to a class of persons protected by Title VII; (2) that the she performed her job satisfactorily; (3) that the plaintiff suffered an adverse employment action; and (4) that her employer treated her differently than a similarly situated employee who does not belong to the same protected class as the plaintiff." *Cornwell v. Electra Cent. Credit Union*, 439 F.3d 1018, 1028 (9th Cir. 2006) (citations and internal quotations omitted).

/////

---

[2] In the introductory section of the complaint, plaintiff alleges that she was denied due process "when a written complaint of racial discrimination was made." ECF No. 1 ¶ 1. The complaint, however, does not allege a due process claim. Significantly, in response to an interrogatory served by defendant, plaintiff confirmed that she only asserts claims under Title VII. Decl. of Shanan Hewitt, Exs. B (ECF No. 35-3 at 14) & C (ECF No. 35-3 at 23).

1    Similarly, a prima facie case for retaliation is dependent upon a threshold showing of facts sufficient to give rise to an inference of unlawful retribution for having complained of discrimination or otherwise engaged in activity protected by Title VII. Thus, to establish a prima facie case of retaliation, plaintiff must establish that "(1) [s]he engaged in protected activity, (2) [s]he suffered an adverse personnel action, and (3) there was a causal link between the two." *Jordan v. Clark*, 847 F.2d 1368, 1376 (9th Cir. 1988); *Yartzoff*, 809 F.2d at 1375.

If plaintiff establishes a prima facie case, the burden shifts to the employer to articulate a legitimate, non-discriminatory (and, here, non-retaliatory) reason for its decision. *Manatt v. Bank of Am., N.A.*, 339 F.3d 792, 800 (9th Cir. 2003). Once an employer does so, the plaintiff bears the burden of proving that the articulated reason was merely a pretext for a discriminatory motive. *Id.*; *Costa v. Desert Palace, Inc.*, 299 F.3d 838, 856 (9th Cir. 2002) (en banc) (citing *Price Waterhouse v. Hopkins*, 490 U.S. 228, 260 (1989)).

a.    <u>Prima Facie Case</u>

In applying the shifting burdens analysis, the starting point is whether plaintiff has produced sufficient evidence to establish a prima facie case. The Ninth Circuit has noted that "[a] plaintiff alleging employment discrimination 'need produce very little evidence in order to overcome an employer's motion for summary judgment. This is because the ultimate question is one that can only be resolved through a searching inquiry-one that is most appropriately conducted by a factfinder, upon a full record.'" *Davis v. Team Elec. Co.*, 520 F.3d 1080, 1089 (9th Cir. 2008) (internal citations omitted); *see also Peterson v. Hewlett-Packard Co.*, 358 F.3d 599, 603 (9th Cir. 2004) (quoting *Forsberg v. Pac. Northwest Bell Tel. Co.*, 840 F.2d 1409, 1419 (9th Cir. 1988)).

The County does not dispute that plaintiff, who is African-American, is a member of a protected class, nor does it dispute that plaintiff's termination was an adverse employment action. ECF No. 35-1 at 23. It argues, however, that plaintiff has not established a prima facie case because she cannot demonstrate that racial discrimination was a motivating factor to terminate her employment. *Id*.

/////

7

Plaintiff's disparate treatment claim hangs on her contention that Ms. Espinoza's March 17, 2014 statements regarding plaintiff's intent to take the African American Cultural Special Skills exam reflected racial animus towards plaintiff and African Americans and that further conflicts between the plaintiff and her supervisor stemmed from that animus. Plaintiff contends that Ms. Espinoza's statement "dealing with that particular demographic can be difficult" has racial undertones that could be construed as hostile to a particular race. While that one statement is the only racial incident identified by plaintiff, and even if it is somewhat ambiguous as to whether it evinces actual animus, there is evidence reflecting that plaintiff's relationship with Espinoza was strained following the March 17 conversation.

After the conversation, Espinoza began making more frequent visits to plaintiff's work station. Stephens Decl. ¶ 14. According to plaintiff, Espinoza stopped by plaintiff's work station on March 27, 2014 and simply stared at her and a coworker. *Id*. ¶ 20. Allegedly, after an awkward pause, Espinoza stated that she didn't need anything and was just passing by. *Id*. The following month, plaintiff informed Espinoza and Doyle that she had been feeling uneasy since the March 17 conversation. *Id*. ¶ 25. In response, Doyle stated that plaintiff may have misunderstood or misperceived Espinoza's intention. *Id*. The following month, plaintiff's employment was terminated. *Id*. ¶ 27.

As noted, the threshold for establishing a prima facie case of disparate treatment is low. The single statement to plaintiff with the racial overtone about difficulty "dealing with that particular demographic" combined with the temporal proximity of plaintiff's termination following her telling Espinoza and Doyle of her discomfort since the March 17 conversation is sufficient to establish a prima facia case that the termination was motivated both by racial animus and retaliation for complaining about the March 17 statement. *See Davis*, 520 F.3d at 1089.

As for plaintiff's retaliation claim, the County also argues plaintiff has failed to show a causal link between any protected activity and her release from employment. Specifically, the County contends that plaintiff has not provided any evidence suggesting the termination of her employment was motivated by retaliation. ECF No. 35-1 at 27. But this argument ignores the proximity in time between the complaint and the firing.

Establishing a causal link "requires proof that the unlawful retaliation would not have occurred in the absence of the alleged wrongful action or actions of the employer." *Univ. of Tex. Southwestern Med. Ctr. v. Nassar*, 570 U.S. 338, 360 (2013) (concluding that a plaintiff making a retaliation claim under Title VII "must establish that his or her protected activity was a but-for cause of the alleged adverse action by the employer"). "To show the requisite causal link, the plaintiff must present evidence sufficient to raise the inference that her protected activity was the likely reason for the adverse action." *Cohen v. Fred Meyer, Inc.*, 686 F.2d 793, 796 (9th Cir. 1982). "The causal link can be inferred from circumstantial evidence such as the employer's knowledge of the protected activities and the proximity in time between the protected activity and adverse action." *Dawson v. Entek Int'l*, 630 F.3d 928, 936 (9th Cir. 2011) (citing *Jordan v. Clark*, 847 F.2d 1368, 1376 (9th Cir. 1988)); *see also Clark Cty. Sch. Dist. v. Breeden*, 532 U.S. 268, 273 (2001) (per curiam) (holding that a court may not infer causation from temporal proximity unless an employer's knowledge of protected activity and an adverse employment action are "very close" in time).

In her declaration, plaintiff states that she emailed Doyle on March 27, 2014 to complain about the remarks Espinoza made ten days earlier. *Id*. ¶ 23. A meeting was held on April 2, 2014, to address plaintiff's complaint. *Id*. ¶ 25. It was at that meeting Doyle informed plaintiff that she had misinterpreted Espinoza's intentions. *Id*. Seven weeks later, plaintiff's employment was terminated. *Id*. ¶ 27. While there is no direct evidence that plaintiff was terminated for submitting her complaint to Doyle, plaintiff can meet her burden through indirect evidence. The date on which plaintiff made her complaint to Doyle is sufficiently proximate to the termination of her employment to "raise the inference that her protected activity was the likely reason for the adverse action." *Cohen*, 686 F.2d at 796; *see Villiarimo v. Aloha Island Air, Inc.*, 281 F.3d 1054, 1065 (9th Cir. 2002) (finding a prima facie case of causation where plaintiffs were discharged from employment 42 and 52 days after the alleged protected activity)); *Yartzoff*, 809 F.2d at 1376 (holding that sufficient evidence existed where adverse actions occurred less than three months after the complaint was filed, two weeks after the charge was first investigated, and less than two months after the investigation ended).

9

Accordingly, plaintiff has proffered sufficient evidence to satisfy the low burden of establishing a prima facia case.

### b. Legitimate, Non-Discriminatory Reason

The County argues that plaintiff's employment was terminated due to insubordination and unprofessionalism, which are legitimate, non-discriminatory reasons for terminating plaintiff's employment. ECF No. 35-1 at 26-27.

When a plaintiff establishes a prima facie case, the burden of producing evidence that legitimate, nondiscriminatory reasons existed for the adverse employment action shifts to the defendant, but the burden of persuasion remains with the plaintiff. *Burdine*, 450 U.S. at 256. "The employer need not persuade the court that it was actually motivated by the proffered reasons: 'It is sufficient if the defendant's evidence raises a genuine issue of fact as to whether it discriminated against the plaintiff.'" *Yartzoff*, 809 F.2d at 1376 (quoting *Burdine*, 450 U.S. at 254-55). Thus, a defendant "need only produce admissible evidence which would allow the trier of fact rationally to conclude that the employment decision had not been motivated by discriminatory animus." *Id*.

Here, the County has submitted evidence demonstrating that plaintiff was uncooperative, difficult to work with, and insubordinate. For instance, on March 13, 2014, Espinoza tried to speak with Plaintiff, but Plaintiff declined to speak with her, excusing herself by saying that she had just gotten back from getting lunch and had not eaten yet. Espinoza Decl. ¶ 7. The following week, Espinoza instructed plaintiff to complete the Time On Aid ("TOA") sheets assistance recertification packets. *Id*. ¶ 8. In response, plaintiff confronted Espinoza, expressing that, upon talking with her peers, she had learned that other employees were not required to have TOA sheets reviewed. *Id*. Although Espinoza explained that it was policy that a review of TOA sheets be completed, it was later discovered that plaintiff had not completed her TOA sheets correctly. *Id*. Espinoza also discovered that plaintiff had been working on her TOA sheets with her sister, Shontae Stephens – Espinoza's peer and another supervisor at the Department – rather than seeking assistance from Espinoza, as plaintiff had been instructed. *Id.* ¶¶ 8, 15.

/////

On March 24, 2014, plaintiff informed Espinoza that she left early the previous day due to a family emergency in violation of the County's policy that employees seek approval for leave, including leave for an emergency. *Id*. ¶ 10; Doyle Decl. ¶ 10. Espinoza asked plaintiff to come to her office to discuss her leaving early the prior day. Espinoza Decl. ¶ 10. In response, plaintiff stated, "Walk all the way over there?" *Id*. On the same date, Espinoza met with plaintiff to discuss one of plaintiff's cases. During the conversation, plaintiff spoke to Espinoza in a tone that Espinoza found confrontational. *Id*. ¶ 11. Espinoza also learned that plaintiff had failed to complete a traffic log ticket for her client, which was one of plaintiff's responsibilities. *Id*. A few days later, Espinoza asked plaintiff to come to her office to discuss a matter, and plaintiff again complained about walking "all the way over there." *Id*.¶ 13. After further discussions, plaintiff stated she was frustrated and needed a minute. *Id*. Espinoza waited a minute before speaking again but was interrupted by plaintiff stating: "I said I need a minute, that means you need to leave." *Id*. ¶ 13.

In early May 2014, two employees complained that plaintiff had been acting unprofessional towards them and plaintiff's clients. *Id*. ¶ 16, Ex. D. Thereafter, Doyle conducted a review of all probationary employees. *Id*. ¶ 17. The review of plaintiff's 16 cases showed that 12 were deficient with errors. *Id*. Although plaintiff had subsequently corrected seven of the errors, five cases remained incomplete. *Id*. Shortly after this review, plaintiff's employment was terminated. *Id*. ¶ 18.

This evidence, none of which plaintiff disputes, demonstrates that plaintiff acted in an unprofessional manner when interacting with her supervisor and coworkers, and that she failed to follow office procedures. Accordingly, the County has presented evidence in support of an articulated legitimate, nondiscriminatory basis for terminating plaintiff's probationary employment.

            c.      <u>Pretext</u>

Plaintiff can demonstrate pretext by "directly persuading the court that a discriminatory [or retaliatory] reason more likely motivated the employer[,] or indirectly by showing that the employer's proffered explanation is unworthy of credence." *Stegall v. Citadel Broad. Co.*, 350

F.3d 1061, 1066 (9th Cir. 2003) (quoting *Burdine*, 450 U.S. at 248 (citation omitted)). "'Direct evidence is evidence which, if believed, proves the fact [of discriminatory or retaliatory animus] without inference or presumption.'" *Godwin v. Hunt Wesson, Inc.*, 150 F.3d 1217, 1221 (9th Cir. 1998) (quoting *Davis v. Chevron, U.S.A., Inc.*, 14 F.3d 1082, 1085 (5th Cir. 1994)). "When the plaintiff offers direct evidence of discriminatory motive, a triable issue as to the actual motivation of the employer is created even if the evidence is not substantial." *Godwin*, 150 F.3d at 1221. In contrast, when direct evidence is unavailable, and the plaintiff proffers only circumstantial evidence that the employer's motives were different from its stated motives, plaintiff must show "specific" and "substantial" evidence of pretext to survive summary judgment. *Id*. at 1222. To meet this burden, plaintiff "cannot simply show the employer's decision was wrong, mistaken or unwise." *Dep't of Fair Employment & Housing v. Lucent Techs.*, 642 F.3d 728, 746 (9th Cir. 2011). She "must demonstrate such weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions in the employer's proffered legitimate reasons for its action that a reasonable fact-finder could rationally find them unworthy of credence." *Id*.

Here, plaintiff has failed to produce evidence that can satisfy that standard. She simply fails to show that the County's proffered reasons for terminating her employment are pretextual. Plaintiff describes different incidences when supervisors, including Espinoza, spoke aggressively towards her. *See* Stephens Decl. ¶¶ 22, 24. But she does not dispute the facts surrounding any of the incidences of unprofessional conduct described above. Accordingly, plaintiff has not shown that the proffered nondiscriminatory reason for terminating her employment was pretextual.

Accordingly, the County is entitled to summary judgment on plaintiff's disparate treatment and retaliation claims.

    2.  <u>Hostile Work Environment</u>

Plaintiff's also alleges that she was subjected to a hostile work environment after she complained about Ms. Espinoza's March 17, 2014 statements. ECF No. 1 ¶¶ 29-30.

To establish a prima facia hostile work environment claim, plaintiff must proffer evidence showing "(1) she was 'subjected to verbal or physical conduct' because of her race, (2) 'the conduct was unwelcome,' and (3) 'the conduct was sufficiently severe or pervasive to alter the

conditions of [her] employment and create an abusive work environment.'" *Manatt v. Bank of America, N.A.*, 339 F.3d at 798. "The work environment must be both subjectively and objectively perceived as abusive." *Campbell v. Hawaii Dept. of Edu.*, 892 F.3d 1005, 1017 (9th Cir. 2019). "In determining whether a work environment is sufficiently hostile, the court evaluates the totality of the circumstances, 'including the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance.'" *Fuller v. Idaho Dept. of Corrections*, 865 F.3d 1154, 1161 (9th Cir. 2017). [T]he required showing of severity or seriousness of the harassing conduct varies inversely with the pervasiveness or frequency of the conduct." *Ellison v. Brady*, 924 F.2d 872, 878 (9th Cir. 1991).

Here, plaintiff has failed to produce evidence demonstrating conduct that was sufficiently severe to alter the conditions of her employment and create an abusive work environment. She identifies a single statement which she relies upon as evidence of racial animus. But as noted *supra,* even that statement is ambiguous as to Espinoza's intent. Plaintiff may well have found it offensive, but it does not rise to the level of severe and pervasive hostility that is actionable under Title VII. See *Manatt v. Bank of America, NA,* 339 F.3d at 798-99.

Plaintiff states that after the Espinoza's March 17 statement, Espinoza began visiting plaintiff's work station 5-6 times a day. Stephens Decl. ¶ 14. She also states that on March 20, 2014, Espinoza switched the time for a regularly scheduled meeting, which interfered with plaintiff's lunch break. *Id.* ¶ 16. On March 25, 2014, Espinoza stopped by plaintiff's work station, said hello, and then proceeded to stand and stare at plaintiff and a coworker. After an awkward pause, the coworker left and Espinoza stated that she "didn't really want anything, I was just passing by." *Id.* ¶ 19. Plaintiff further declares that on April 1, 2014, a different supervisor "began aggressively asking me about why I did not respond to the PA calls regarding a client." *Id.* ¶ 24.

While plaintiff may have subjectively found these interactions offensive and believed them to be related to the March 17 incident, the described incidences are not the type that can be fairly characterized as "sufficiently severe or pervasive to alter the conditions of [her]

13

employment and create an abusive work environment.'" *Manatt*, 339 F.3d at 798. Accordingly, the County is also entitled to summary judgment on plaintiff's hostile work environment claim.

III. <u>Conclusion</u>

Accordingly, it is hereby ORDERED that the November 16, 2018 order to show cause (ECF No. 36) is discharged and no sanctions are imposed.

Further, it is RECOMMENDED that:

1. The County's motion for summary judgment (ECF No. 35) be granted; and

2. The clerk be directed to enter judgment in defendant's favor and close the case.

These findings and recommendations are submitted to the United States District Judge assigned to the case, pursuant to the provisions of 28 U.S.C. § 636(b)(l). Within fourteen days after being served with these findings and recommendations, any party may file written objections with the court and serve a copy on all parties. Such a document should be captioned "Objections to Magistrate Judge's Findings and Recommendations." Failure to file objections within the specified time may waive the right to appeal the District Court's order. *Turner v. Duncan*, 158 F.3d 449, 455 (9th Cir. 1998); *Martinez v. Ylst*, 951 F.2d 1153 (9th Cir. 1991).

DATED: September 10, 2019.

_____
EDMUND F. BRENNAN
UNITED STATES MAGISTRATE JUDGE